IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | |
|---|---|
| LINDA W. FIELDS, | ) |
| Plaintiff, | ) Civil No. 2:05-cv-01027-BSJ |
| vs. | ) |
| CUNA MUTUAL INSURANCE SOCIETY, INC., | ) **MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT** |
| Defendant. | ) |
| CUNA MUTUAL INSURANCE SOCIETY, INC., | ) |
| Counterclaimant, | ) |
| vs. | ) |
| LINDA W. FIELDS, ESTATE OF JERRY PALENSKY, MARIE MASNA, JOSEF PALENSKY, JIRI PALENSKY, and DOES 1-10, | ) |
| Counterclaim Defendants. | ) |

```
FILED
CLERK, U.S. DISTRICT COURT
August 1, 2011 (4:14pm)
DISTRICT OF UTAH
```

* * * * * * * * *

Before this Court for decision is the Estate's[1] renewed motion for summary judgment ("Motion") (dkt. no. 128). The first motion for summary judgment (dkt. no. 18) was filed on June 27, 2006 and denied on September 25, 2006.[2]

---

[1] Scott Livingston is the personal representative of the estate of Jerry Palensky, Josef Palensky, Marie Masna, and Jiri Palensky. Collectively these parties are referred to as the "Estate." (Renewed Mot. for Summ. J., filed Mar. 29, 2011 (dkt. no. 128), at 1-2.)

[2] (Order, dated Oct. 4, 2006 (dkt. no. 54).)

1

The Court heard oral argument on the Motion on June 17, 2011.[3] Blake Miller and Lauren Parry Johnson appeared on behalf of the Estate, Matthew Moncur on behalf of CUNA Mutual Insurance Society ("CUNA"), and Brian Johnson and Scott Jenkins appeared on behalf of Linda Fields.[4]

Having carefully considered the parties' memoranda and arguments, as well as the law and facts relevant to the Motion, the Court enters the following Order.

## Background

In August 2002, CUNA issued a $300,000 certificate of insurance on the life of Jerry Palensky, a native of Czechoslovakia ("CUNA Policy").[5] Approximately eighteen months later, Palensky was found dead in Utah's Jordan River.[6] Police determined that Palensky died before drowning from blunt force trauma to his head.[7] This case concerns conflicting claims to the proceeds of the CUNA Policy.

Palensky was unmarried and had no children at the time of this death.[8] His only living relatives are his sister Marie Masna and brother Josef Palensky—both residents of the Czech

---

[3] (Transcript of Hearing, dated June 17, 2011 (dkt. no. 146) ("Hr'g Tr.), at 1; Minute Entry, dated June 17, 2011 (dkt. no. 144).)

[4] (*Id.* at 3.)

[5] (Complaint, filed Dec. 12, 2005 (dkt. no. 1), ¶ 9; Answer and Counterclaim for Interpleader, filed Feb. 13, 2006 (dkt. no. 7), ¶ 13.)

[6] (Complaint (dkt. no. 1), ¶ 6; Answer and Counterclaim (dkt. no. 7), ¶ 6; Mem. in Supp. of Renewed Mot. for Summ. J., filed Mar. 29, 2011 (dkt. no. 129), ¶ 1.)

[7] (Complaint (dkt. no. 1), ¶ 7.)

[8] (Mem. in Supp. of Renewed Mot. for Summ. J. (dkt. no. 129), ¶ 2.)

2

Republic.[9] Another brother, Jiri Palensky, died while this action was pending.[10]

According to Linda Fields ("Fields"), she came to know Palensky in 1995 when she married Vern Fields.[11] Mr. Fields and Palensky met while working at the same mine in New Mexico several years prior to the marriage.[12] Palensky periodically stayed with Fields and her husband in Elko, Nevada between 1998 and 2003.[13] In her affidavit, Fields stated that Palensky occasionally asked her for assistance with his "business affairs" because he spoke limited English.[14] On January 7, 2002, Palensky executed a power of attorney naming Fields as attorney-in-fact.[15]

The power of attorney states:

My attorney-in-fact/agent shall act in my name, place and stead in any way which I myself could do, if I were personally present, with respect to the following matters, to the extent that I am permitted by law to act through an agent:
. . . .
(F) Insurance transactions . . .
(G) Gifts to charities and individuals other than Attorney-in-Fact/Agent . . .[16]

In early May 2002, not long after the power of attorney was executed, an Enrollment Form ("Form") for the CUNA Policy was submitted to Sunnyside Credit Union.[17] The Form lists

---

[9] (*Id.* ¶ 3.)

[10] (*Id.*)

[11] (Resp. to the Estate's Renewed Mot. for Summ. J., filed Apr. 29, 2011 (dkt. no. 131), at Ex. A: ¶ 9.)

[12] (*Id.* at Ex. A: ¶ 12.)

[13] (*Id.* ¶ 15.)

[14] (*Id.* ¶ 17.)

[15] (Mem. in Supp. of Mot. for Summ. J., filed June 27, 2006 (dkt. no. 19), at Ex. B.)

[16] (*Id.*)

[17] (*Id.* at Ex. C.)

"Linda Walker Fields" as the beneficiary and identifies Fields as "friend-power of attorney."[18]

Both parties acknowledge that Fields completed the Form.[19]

**Analysis**

The very narrow issue presented here is whether a person designated as attorney-in-fact may name herself as beneficiary under a life insurance policy on the life of her grantor. As explained below, under common law existing prior to and separate from the 2003 enactment of Section 75-5-503 of the Utah Code, an attorney-in-fact may name herself as beneficiary only if expressly authorized to do so by the power of attorney. Because the power of attorney in this case did not so authorize and it is undisputed that Fields completed the Form listing herself as beneficiary while she was attorney-in-fact for Palensky, the designation is void as a matter of law and summary judgment is appropriate.

Summary judgment should be rendered if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (internal quotation marks omitted) (citing *Anderson v.*

---

[18] (*Id.*)

[19] Although Fields admits completing the Form that was submitted, she claims she did so at the instruction of Palensky. (Resp. to Renewed Mot. for Summ. J. (dkt. no. 131), ¶ 16; Mem. in Supp. of Renewed Mot. for Summ. J. (dkt. no. 129), ¶¶ 8-9.) It is unnecessary to decide whether extrinsic evidence of the circumstances surrounding the designation of beneficiary should be allowed. Regardless of why Fields filled out the Form and listed herself as beneficiary, she does not deny doing so.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) and *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). Factual disputes that are irrelevant or unnecessary will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 248. Furthermore, the evidence and its reasonable inferences are to be viewed in the light most favorable to the non-moving party. *Adler*, 144 F.3d at 670.

As early as 1933 the Utah Supreme Court held that an attorney-in-fact does not have the authority to self-deal unless expressly stated in the power of attorney. *See Howard v. Nat'l Copper Bank*, 20 P.2d 610 (Utah 1933). In the *Howard* case, the grantor named his son as his attorney-in-fact. *Id.* at 611-612. Allegedly acting under the broad power of attorney, the son secured a loan using a stock certificate of his father's. *Id.* at 611. In finding that the power of attorney did not authorize the son to act for his own benefit, the court noted, "[t]he taking of property of Isaac Brockbank [grantor] . . . was a dealing with the property of another under a trusted and fiduciary relationship, a self-dealing on the part of L. T. Brockbank [attorney-in-fact] amounting to fraud . . . ." *Id.* at 614. The court placed particular emphasis on the lack of a *specific* statement of authority to "indorse the certificate in question . . . for the personal use or benefit of [the attorney-in-fact]." *Id.* at 613.

Subsequent case law commands the same rule based on three overarching principles. First, a power of attorney must be strictly construed. *Kline v. Utah Dep't of Health*, 776 P.2d 57, 61 (Utah Ct. App. 1989). Second, an attorney-in-fact—as agent for the grantor—may only act within his specifically authorized duties. *Eagar v. Burrows*, 2008 UT 42, ¶ 25, 191 P.3d 9 ("A power of attorney creates a principal-agent relationship."); *Santi v. Denver & Rio Grande W. R.R. Co.*, 442 P.2d 921, 923 (Utah 1968) (holding that an agent may not expand the authority

5

originally granted by the principal using his or her own declarations); *Naujoks v. Suhrmann*, 337 P.2d 967, 969 (Utah 1959) (holding that an agent may only act within the scope of authorized duties). Third, "an agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship." *Eagar*, 2008 UT ¶ 25 (citing Restatement (Third) of Agency § 8.01 (2006)). Transactions where a fiduciary benefits in a dealing with the beneficiary are closely scrutinized to determine whether the agent violated his duty of loyalty to the beneficiary. *See Sweeney v. Happy Valley, Inc.*, 417 P.2d 126, 129 (Utah 1966). It follows from these principles that an attorney-in-fact may not act for her own benefit unless specifically and expressly authorized.

Section 75-5-503 of the Utah Code was enacted one year after the power of attorney in this case was executed. The relevant portion states:

> A power of attorney may not be construed to grant authority to an attorney-in-fact or agent to perform any of the following, unless expressly authorized in the power of attorney . . . (4) designate or change the designation of beneficiaries to receive any property, benefit, or contract right on the principal's death.

Utah Code Ann. § 75-5-503 (Lexis Supp. 2010). Although this statute does not control because it was enacted after the power of attorney executed, the floor debates indicate that Section 75-5-503 is a codification of common law. Representative Merlynn T. Newbold presented the Bill and stated: "House Bill 247 *clarifies* what an attorney in fact can and cannot do in relationship to a trust . . . And what it says [is] that unless in the agreement it specifies that a power of attorney can do these things he cannot do them." Utah State Legislature, House Floor Debate on H.B. 247, 2003 Gen. Sess., http://le.utah.gov/~2003/htmdoc/hbillhtm/HB0247.htm (follow "Floor Debate Audio Files" hyperlink; then follow "House Day 37" hyperlink) (emphasis added).

6

Clarify means "to explain clearly . . . to make less complex or less ambiguous . . ." *Webster's New International Dictionary* 415 (3d. ed. 1971). Thus, Representative Newbold's statement implies the Bill did not change existing law, it merely articulated more clearly that which already existed.

Similar rules prohibiting self-dealing absent express authorization are widely recognized in other jurisdictions. *See Bienash v. Moller*, 721 N.W.2d 431, 435 (S.D. 2006) ("if the power to self-deal is not specifically articulated in the power of attorney, the power does not exist"); *Kunewa v. Joshua*, 924 P.2d 559, 565 (Haw. Ct. App. 1996) ("in the absence of express written authorization, an agent may not gratuitously convey the principal's property to himself"); *Praefke v. Am. Enter. Life Ins.*, 655 N.W.2d 456, 460 (Wis. Ct. App. 2002) ("an attorney-in-fact may not make a gift to himself or herself unless there is an explicit intent in writing from the principal allowing the gift"). Strong policy justifications support such a rule. Namely, requiring express authorization for transactions directly benefitting the attorney-in-fact is a safeguard against fraud.

The Estate claims that Palensky's power of attorney contained an express prohibition against self-dealing which prevents Fields, as attorney-in-fact, from benefitting herself.[20] This express prohibition is contained in subdivision G of the power of attorney, where Palensky granted Fields authority to bestow "gifts to charities and individuals *other than* Attorney-in-Fact/Agent."[21] The Estate acknowledges that Fields was allowed to conduct insurance transactions under subdivision F, yet maintains that under subdivision G Fields could not conduct

---

[20] (Hr'g Tr. (dkt. no. 146), at 6:25-7:6.)

[21] (Mem. in Supp. of Mot. for Summ. J. (dkt. no. 19), at Ex. B (emphasis added).)

any such transaction in a way that benefitted her.[22] Fields, however, contends that the prohibition against self-dealing is not absolute, and that under subdivision F's authority, she could conduct an insurance transaction in a way that named herself as beneficiary.[23]

Yet, the law in Utah is clear: an attorney-in-fact, as agent and fiduciary, must act within the strict confines of a power of attorney, and may therefore not benefit herself unless the power of attorney expressly so states. Here, Fields has run afoul of this rule. It is undisputed that Fields completed the Form listing herself as beneficiary while she was attorney-in-fact for Palensky. In doing so, Fields engaged in an act that benefitted her directly. Express authority in the power of attorney is required for such an act, but is wholly lacking in this instance.

Authority to act with respect to "insurance transactions" does not equate with express authority to name oneself as the beneficiary of a $300,000 life insurance policy. As in the *Howard* case, specificity is lacking here. Moreover, the language of the CUNA Policy itself weighs against a broad reading of the phrase "insurance transactions." Subdivision G expressly states Fields can make gifts to anyone *other than herself*. Without reaching the question of whether a beneficiary designation on a life insurance policy constitutes a "gift," this subdivision clearly prohibits at least some self-dealing. Therefore, in addition to failing to expressly state that Fields may name herself as beneficiary, other language in the power of attorney suggests that the grantor intended to limit the authority of the attorney-in-fact to self-deal.

The power of attorney in this case did not expressly authorize Fields to designate herself as a beneficiary of Palensky's life insurance policy. Because there is no genuine dispute that

---

[22] (Hr'g Tr. at 22:3-13.)

[23] (*Id.* at 16:14-17:7.)

Fields listed herself as beneficiary of the CUNA Policy while she was Palensky's attorney-in-fact,

**IT IS ORDERED** that the Estate's Renewed Motion for Summary Judgment (dkt. no. 128) is GRANTED.

DATED this 1st day of August, 2011.

BY THE COURT:

*/s/ Bruce S. Jenkins*
Bruce S. Jenkins
United States Senior District Judge